UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COSTAR REALTY INFORMATION, INC.,<br><br>    Plaintiff,<br>v.<br><br>JOHN DOES 1-X,<br><br>    Defendants. | Case No.  1:14-cv-2304-AKH<br><br>COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES<br><br>JURY TRIAL DEMANDED |

Plaintiff CoStar Realty Information, Inc. hereby alleges for its Complaint against Defendants John Does 1-X, on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows:

### NATURE OF ACTION

1. CoStar is the leading provider of information, marketing, and analytic services to commercial real estate professionals in the United States and United Kingdom. Its innovative, subscription-based services (the "CoStar Service") are the result of the company's extraordinary investments, effort, and creativity over the last twenty-five years, along with its ongoing commitment to maintain and improve its offerings. The CoStar Service is used by tens of thousands of brokers, owners, developers, lenders, investment bankers, REITs, retailers, appraisers, governmental agencies, and others.

2. The Doe Defendants are various individuals and/or companies that have violated the license agreements (the "CoStar License") that govern their use of the proprietary CoStar Service. Specifically, and without limitation, the Doe Defendants

1

violated the CoStar License by using the CoStar Service to support Compstak, Inc. ("Compstak"), which is a real estate information service that competes with CoStar in the marketplace.  The Doe Defendants not only violated their CoStar Licenses by removing content from the CoStar Service to provide to CompStak, but also infringed CoStar's copyrights by reproducing and/or distributing CoStar's photographs without authorization.

3. CoStar and CompStak are both companies engaged in the provision of commercial real estate information.  Yet that is where the comparison begins and ends.  CoStar provides its service by employing over one thousand professional researchers who proactively collect and analyze commercial real estate information.  CoStar's researchers drive millions of miles, conduct hundreds of thousands of on-site building inspections and conduct millions of telephone interviews of brokers, owners and tenants.  CoStar's field researchers physically inspect and photograph commercial real estate properties in virtually every metropolitan area in the United States, London and other parts of the United Kingdom.  Rather than perform its own research, Compstak is a "crowd-sourced database" that serves as a "comp sharing network for brokers, appraisers and researchers."  CompStak primarily depends upon third parties to provide it with content.  In particular, Compstak lures commercial real estate brokers, appraisers and researchers into providing it with data concerning completed lease transactions, *i.e.*, "lease comps," by offering them free access to other lease comps in return.  Commercial real estate brokers, appraisers and researchers can also receive access by updating comps already submitted by others.  CompStak then charges banks, private equity, REITS, and Hedge Funds for access to the submitted comps.

4.      To protect against violation of its legal rights, CoStar inserts bits of fictitious data within the property records that appear within the CoStar Service.  This practice, which is common in the content industry, is often referred to as "seeding" or "salting" a publication.  In industry practice, seeds can vary from fictitious listings or names to minor alterations in otherwise accurate records.

5.      The existence of seeds in the CoStar Service turned out to be essential in this instance.  An investigator hired to protect against violation of CoStar's legal rights recently uncovered that seeded data from the CoStar Service now appears in Compstak's commercial real estate information service.  The seeded data found by the investigator consists of deliberate alterations to square footage information, as it appears within the lease comps listed by address and CompStak ID # on <u>Exhibit A</u> hereto.  The presence of this seeded data in the CompStak service constitutes the proverbial "smoking gun" in the hands of the Doe Defendants.

6.      At present, CoStar can only identify Doe Defendants as those individuals and entities that submitted the seeded square footage data to CompStak.[1]  It is currently not known to CoStar whether there is a single Doe Defendant or multiple Doe Defendants.  If multiple individuals have violated CoStar's rights, CoStar does not know whether they work at a single company or are spread across multiple companies.  With the Court's permission, however, CoStar will serve a subpoena on CompStak for information sufficient to reveal the true identities of the pertinent individual (or individuals) and company (or companies).  The identifying information is readily

---

[1] This lawsuit concerns more than just submission of a single field of seeded data from the CoStar Service to CompStak.  The presence of seeded data in a competitor's database is a proxy for a larger course of actionable conduct, in terms of violating the CoStar License and infringing CoStar's copyrights to its photographs, by the Doe Defendants.

3

accessible to CompStak, including, without limitation, through the registration data that a broker, appraiser or researcher provides to CompStak and its records as to the data submissions by that user and for the lease comps listed on Exhibit A.

7. To be clear, this lawsuit does not concern the Doe Defendants' independent provision of commercial real estate information to Compstak, outside of their use or copying of the CoStar Service. The CoStar License only governs use of the CoStar Service. It does not preclude the Doe Defendants from independently providing commercial real estate information to Compstak or anyone else. CoStar welcomes competition, including from CompStak. But CoStar will not sit idle when, in violation of its legal rights, its own service is used to support the competition. Accordingly, CoStar brings this action for injunctive relief and damages.

## PARTIES

8. CoStar Realty Information, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business and corporate offices located at 1331 L Street, N.W. Washington, DC 20005.

9. The identities of the Doe Defendants are not presently known to CoStar. As indicated above, it is currently not known to CoStar whether there is a single Doe Defendant or multiple Doe Defendants. If multiple individuals have violated CoStar's rights, CoStar does not know whether they work at a single company or are spread across multiple companies.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction over the action pursuant to 28 U.S.C § 1331 as an action that arises under the laws of the United States. The Court

further has exclusive federal jurisdiction pursuant to 28 U.S.C. § 1338(a) as a case arising under the Copyright Act.

11. The Court has supplemental jurisdiction over CoStar's breach of contract claim pursuant to 28 U.S.C. § 1367(a) because this claim is so related to CoStar's claim under federal law that it forms part of the same case or controversy and derives from a common nucleus of operative fact.

12. This Court may also have jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs. At this time CoStar is unable to conclude the controversy is anything other than a dispute between citizens of different states.

13. This Court has personal jurisdiction over the Doe Defendants who improperly used the CoStar Service to support CompStak, which is located in this District. In particular, Doe Defendants removed content from the CoStar Service and provided it to Compstak, making it reasonable and foreseeable for them to be brought into Court in this District over these claims. In registering with CompStak, Doe Defendants also agreed that disputes over their submission of content to CompStak would be heard in this District.

14. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1400 because a substantial part of the events giving rise to the claim occurred in this District.[2]

---

[2] In connection with CoStar's acquisition of LoopNet, Inc., CoStar has agreed to enter into a consent order with the Federal Trade Commission, which provides CoStar's customers the opportunity to resolve intellectual property claims, including infringement of CoStar's copyrights, and/or claims regarding violation of certain use restrictions imposed by CoStar's License Agreement through binding arbitration. Thus, upon ascertaining the identities of the Doe Defendants in this action, if appropriate, CoStar shall provide the requisite arbitration notice.

## COSTAR AND ITS BUSINESS

15. Founded in 1987, CoStar has revolutionized the commercial real estate industry with a simple idea: empower brokers and other commercial real estate professionals with researched, unbiased commercial property information.

16. Since that time, CoStar has invested tens of millions of dollars each year to maintain the industry's largest research organization, along with state of the art software technology and research methods. As of January 31, 2014, CoStar's research team had approximately 1,123 trained professionals (research analysts and field researchers) who each year make millions of data changes, make more than 10,000 calls a day, canvass more than half a million properties nationwide, and take more than one million photographs. These researchers are constantly improving the CoStar Service through millions of phone, email and internet updates, field inspections, public records review, news monitoring and direct mail.

17. The end result is the CoStar Service, which supports better decision-making, facilitates transactions, and brings greater transparency, reliability, insight, and efficiency to the commercial real estate marketplace. The CoStar Service, among other things, offers licensed users an integrated suite of online service offerings that includes information about space available for lease, tenant information, comparable sales information, and information about properties for sale. CoStar's licensees can search the CoStar Service by selecting from the more than 150 fields of information and analysis included for each property to find those properties that suit their needs. CoStar's licensees can, among many other things, view lease comps for details such as the rates and terms of specific leases for space.

18. The CoStar Service and the content therein are not part of a repository of information available for free. Rather, in exchange for a subscription fee, CoStar provides its services to businesses that enter into a written license agreement with CoStar. The written license agreement limits the subscriber's access and use of the CoStar Service to specific numbers of licensed users, licensed sites, and permitted and prohibited uses.

19. Once a party executes a license agreement with CoStar, each of its authorized users is provided with a user identification and password and is given authorized use for Internet-based access to CoStar's subscription information services, at CoStar's website, www.costar.com, in accordance with the terms of the party's license agreement. An authorized user must input a valid user identification and password at the login area to gain authorized access to CoStar's restricted access information services for which they are licensed.

20. The login area at www.costar.com contains a prominent notice advising the user that "Login/Use Subject to Terms." The word "Terms" is hyperlinked to CoStar's actual Terms of Use for its website, www.costar.com, and the services accessed therein. By clicking on the underlined word "Terms," the user can view the terms of use, which provide:

> By accessing or using this Site (or any part thereof), you agree to be legally bound by the terms and conditions that follow (the "Terms of Use") as we may modify them from time to time. These Terms of Use apply to your use of this Site, including the CoStar services offered via the Site. **They constitute a legal contract between you and CoStar, and by accessing or using any part of the Site you represent and warrant that you have the right, power and authority to agree to and be bound by these Terms of Use.** If you do not agree to the Terms of Use, or if you do not have the right, power, and authority to agree to and be bound by these Terms of

7

Use, you may not use the Site. (emphasis added).

21. The authorized user must scroll through and accept the applicable online Terms of Use the first time they use the product as well as at periodic intervals thereafter.

22. Both the written license agreement and the online terms of use agreement provide that CoStar and its licensors have and shall retain ownership in all proprietary rights to the CoStar Service and that the subscriber or user has no right or interest except to use the CoStar Service as set forth in the agreement. They further provide that except for certain permitted uses the CoStar Service shall not be used or shared with third parties.

23. None of the permitted purposes (e.g., internal research purposes) set forth in the license agreement or online terms of use agreement even remotely permits use of the CoStar Service to provide a competitor of CoStar's, such as Compstak, with commercial real estate information taken from the CoStar Service. In fact, several of the prohibited uses specifically provide that use of the CoStar Service in that manner is precluded. For instance, the agreements state that notwithstanding any other provision in the agreement, the licensee shall not provide any portion of the CoStar Service to any direct or indirect competitor of CoStar. The agreements, among other things, further provide that in no circumstance may the licensee use any portion of the CoStar Service to create, directly or indirectly, any database or product.

24. Under the license agreement and online terms of use agreement, upon a breach CoStar is entitled to any damages and relief available at law or in equity, along with recovery of all costs, including attorneys' fees, CoStar incurs to obtain any remedy to which it is entitled under the agreements.

25.     The unauthorized and illicit activity alleged herein, by its very nature, occurs behind closed doors.  As a result, much of the evidence concerning its scope lies in the hands of Defendants and third parties.   Exhibits A and B are non-exhaustive, illustrative lists.  Based on the evidence available to CoStar at this time, it is likely that there are many more instances of infringement and other violations of CoStar's rights.

## COUNT ONE – COPYRIGHT INFRINGEMENT

26.     CoStar repeats and re-alleges each and every allegation set forth above, and incorporates them herein by reference.

27.     CoStar owns valid copyrights in commercial real estate photographs taken by CoStar photographers, including, without limitation, the main building photographs in the CoStar Service for the addresses listed on Exhibit B.

28.     The Doe Defendants, without permission or consent of CoStar, have made unauthorized reproductions and/or distributions of CoStar's copyrights in the main building photographs listed on Exhibit B in connection with their use of the CoStar Service to provide content from the CoStar Service to CompStak.  For example, Doe Defendants downloaded to their computers, without authorization and in violation of CoStar's copyrights, the CoStar main building photographs listed on Exhibit B.  Such copying constitutes infringement of CoStar's registered copyrights and CoStar's exclusive rights under copyright in violation of 17 U.S.C. §§ 106(1), (6).

29.     The infringement of CoStar's rights in each of its copyrighted photographs constitutes a separate and distinct act of infringement.

30.     Doe Defendants' acts of infringement are willful, intentional and purposeful, in reckless disregard of an indifference to the rights of CoStar.

31. Because CoStar registered its copyrights in the commercial real estate photographs infringed by Doe Defendants prior to the infringement and/or within three months of the publication of such copyrighted works, CoStar is entitled to an award of statutory damages of no less than $750 and up to $150,000 per work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). In the alternative, at CoStar's election pursuant to 17 U.S.C. § 504(b), CoStar is entitled to its actual damages, including Doe Defendants' profits from infringement, in amounts to be proven at trial.

32. CoStar is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

33. Doe Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause CoStar great and irreparable injury that cannot fully be compensated or measured in money. CoStar has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, CoStar is entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT TWO – BREACH OF CONTRACT

34. CoStar repeats and re-alleges each and every allegation set forth above, and incorporates them herein by reference.

35. CoStar's written license agreement is a valid contract.

36. CoStar's website terms of use agreement is also a valid contract.

37. By entering into a written license agreement with CoStar and/or accepting the online terms of use and logging into and using the CoStar Service, Doe Defendants agreed to be bound by the terms of the written license agreement with CoStar and/or the terms of use agreement of CoStar's website.

38. Doe Defendants breached the written license agreement and/or online terms of use agreement by, *inter alia,* (a) using the CoStar Service for a purpose outside the "permitted uses" set forth in the agreements, and (b) using the CoStar Service for purposes specifically addressed in the "prohibited uses" set forth in the agreements, including (i) providing portions of the CoStar Service to a direct or indirect competitor of CoStar, and (ii) using the CoStar Service to directly or indirectly create or contribute to the development of a database or product.

39. As a direct and proximate result of Doe Defendants' breaches as described above, CoStar has been injured. Among other things, Doe Defendants' breach of contract has unfairly disadvantaged CoStar through the improper use of the CoStar Service to support CoStar's competitor. Doe Defendants' breach of contract has caused CoStar to incur costs, including reasonable attorneys' fees, in order to obtain remedies to which it is entitled. Doe Defendants' breaches may also cause a loss of subscription revenue to CoStar. CoStar has suffered damages in amounts to be proven at trial and is entitled to compensatory damages.

40. Doe Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause CoStar irreparable injury that cannot be fully compensated or measured in money damages. CoStar has no adequate remedy at law and is entitled to preliminary and permanent injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, CoStar prays for judgment against Doe Defendants as follows:

a) As to Count I, a judgment against Doe Defendants that they have infringed CoStar's copyrights in its photographs;

b) As to Count II, a judgment against Doe Defendants that they have breached their contract with CoStar;

c) As to Counts I and II, a preliminary and permanent injunction (a) restraining and enjoining Doe Defendants and any of their principals, officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with them, from (i) infringing CoStar's copyrights, (ii) making any unauthorized access to or use of any CoStar Service, (iii) interfering with CoStar's current or prospective contracts pertaining to use and access of any CoStar Service, and (iv) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (iii) above;

d) As to Count I, for statutory damages pursuant to 17 U.S.C. § 504(c), in amounts to be proven at trial, arising from Doe Defendants' violations of CoStar's rights in its photographs under the Copyright Act or, in the alternative, at CoStar's election pursuant to 17 U.S.C. § 504(b), CoStar's actual damages, including Doe Defendants' profits from infringement, in amounts to be proven at trial;

e) As to Count II, for compensatory damages in amounts to be proven at trial;

f) As to Counts I and II, for CoStar's costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and/or the CoStar License or otherwise;

g) For prejudgment and post-judgment interest; and

h) For such other and further relief as is just.

## DEMAND FOR JURY TRIAL

CoStar requests a trial by jury.

Dated:  April 1, 2014

By: _____
Matthew J. Oppenheim
Scott A. Zebrak (*pro hac vice* to be filed)
Kerry M. Mustico
OPPENHEIM + ZEBRAK, LLP
4400 Jenifer Street, NW, Suite 250
Washington, DC 20015
Tel:  202-621-9027
Fax: 866-766-1678
matt@oandzlaw.com
scott@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiff*
CoStar Realty Information, Inc.