Tonia Ouellette Klausner
Jason B. Mollick
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 497-7700
Facsimile: (212) 999-5899

*Counsel for CompStak, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |
| COSTAR REALTY INFORMATION, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 14 Civ. 2304 (AKH) |
| ) | |
| v. ) | ECF CASE |
| ) | |
| JOHN DOES 1-X, ) | |
| ) | |
| Defendants. ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |

**MEMORANDUM OF LAW IN SUPPORT OF COMPSTAK, INC.'S**
**MOTION FOR RECONSIDERATION AND TO STAY DISCOVERY ORDER**
**PENDING SUCH RECONSIDERATION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

BACKGROUND ....................................................................................................................... 3

    A.    CompStak's Commercial Real Estate Information Service .................................. 3

    B.    CoStar's Action Against CompStak Users ........................................................... 3

ARGUMENT ............................................................................................................................. 5

    A.    An August 2012 FTC Consent Order Prohibits CoStar From Filing
           Judicial Actions Against Persons Who Provide Independently-Obtained
           Data to CoStar's Competitors ................................................................................ 5

    B.    CoStar's Lawsuit Violates The Consent Order Because The Doe
           Defendants Obtained The Square Footage Data They Provided to
           CompStak From Independent Sources ................................................................... 7

    C.    CompStak Will Suffer Irreparable Competitive Harm if CoStar is
           Permitted to Continue The Present Lawsuit Against CompStak Users ................. 9

CONCLUSION ........................................................................................................................ 10

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**<u>Cases</u>**

*Aczel v. Labonia,*
    584 F.3d 52 (2d Cir. 2009) ................................................................................ 5

*Digital Sin, Inc. v. Doe,*
    12 Civ. 3873 (JMF), 2012 U.S. Dist. LEXIS 78832
    (S.D.N.Y. June 6, 2012) ..................................................................................... 9

*Graham v. James,*
    144 F.3d 229 (2d Cir. 1998) .............................................................................. 5

*Pearson Education, Inc. v. Doe,*
    No. 12 Civ. 4786(BSJ)(KNF), 2012 WL 4832816 (S.D.N.Y. Oct. 1, 2012) ..................... 8

**<u>Statutes</u>**

15 U.S.C. § 18 ............................................................................................................ 6

15 U.S.C. § 45 ............................................................................................................ 6

**<u>Rules</u>**

Local Civ. R. 6.3 ..................................................................................................... 1, 2

Non-party CompStak, Inc. ("CompStak") respectfully submits this memorandum of law in support of its emergency motion, pursuant to Local Civil Rule 6.3, for reconsideration of the Court's April 11, 2014 Discovery Order ("the Discovery Order"), and a stay of the Discovery Order pending such reconsideration.

## PRELIMINARY STATEMENT

CompStak seeks reconsideration in order to bring to the Court's attention information that was not known to CompStak at the time the Court issued the Discovery Order. After business hours on April 10, 2014, counsel for CoStar Realty Information, Inc. ("CoStar") advised CompStak that a hearing had been scheduled for the next morning on CoStar's *ex parte* motion for expedited discovery of the names of the John Doe Defendants who are CompStak customers. Following that hearing, the Court entered the Discovery Order, which compels CompStak to identify these anonymous users to CoStar. This Discovery Order was based on representations from CoStar's counsel that the Doe Defendants posted data to CompStak's service that necessarily came from CoStar's commercial real estate ("CRE") listings database in breach of CoStar's Terms of Use, and thereby committed copyright infringement. Although CompStak attended the hearing, it was not afforded the opportunity to submit papers responsive to CoStar's motion, and had no ability to investigate CoStar's claims in advance of that hearing. Now, based only on a few days' inquiry, CompStak has obtained information making clear that CoStar's claims are meritless and that its discovery demands are a heavy-handed attempt to stifle competition in violation of a 2012 Federal Trade Commission ("FTC") Consent Order.

CompStak has learned that the "seeded" square footage data supposedly derived from CoStar's database – which CoStar described as the "smoking gun" in the hands of the Doe Defendants – is actually publicly-available information that may be obtained by CRE

professionals from a variety of sources other than CoStar.  CompStak has conferred with all of the Doe Defendants and has obtained signed affidavits from all but one of them[1] swearing they obtained the data at issue lawfully from third-party sources—not from CoStar.[2]

The FTC's Consent Order, entered to resolve a lawsuit over CoStar's unlawful and anticompetitive acquisition of LoopNet, Inc. in 2011, is specifically directed to this type of claim by CoStar.  For example, the Consent Order explicitly prohibits CoStar from taking any judicial or other punitive action which "[d]irectly or indirectly prohibits or restricts a Customer from providing any CoStar Competitor ... CRE Listings or CRE Information that relates to Represented Property or Nonrepresented Property, which CRE Listings or CRE Information was obtained or derived by the Customer from a source other than a CoStar Database."  Exhibit A at § III.A.1; *see also* §§ III.H and III.K.  Despite this prohibition, that is precisely what CoStar has done here.

CompStak is deeply concerned that CoStar's effort to learn the names of CompStak's customers and sue them based on meritless claims is an attempt to intimidate and discourage CRE brokers from using databases that compete with CoStar.  The very act of filing and publicizing a lawsuit against named CompStak customers is enough to inflict serious and irreparable damage to CompStak's business.  CoStar's ulterior motives are illustrated by the fact

---

[1]    Given the short timeframe, CompStak was unable to obtain a declaration from Doe Defendant #4 before filing this motion.  However, that Doe Defendant has assured CompStak that he did not obtain any information regarding the subject lease comp from CoStar, but rather from the Commercial Market Research Council, an association of CRE research professionals that regularly trade lease comp information.

[2]    Again, CompStak could not present papers at the hearing on CoStar's *ex parte* application and did not have the opportunity to contact its users in advance of the hearing.  Accordingly, it asks that the Court consider the accompanying declarations of its users and its CEO, Michael Mandel, pursuant to Local Rule 6.3.

that it has already issued not one, but two, press releases regarding this brand new litigation.  *See* Exhibits B and C attached hereto.  CompStak has already spoken with the FTC regarding this matter, and the John Doe Defendants will be doing the same.  But there is not enough time for anyone to act to protect the CompStak users from CoStar's pretextual litigation given the current schedule.

Under the circumstances, CompStak respectfully requests that the Court (i) reconsider its Order; and (ii) stay its Order pending such reconsideration.

## BACKGROUND

### A.    CompStak's Commercial Real Estate Information Service

CompStak is a "crowdsourcing" information database regarding consummated CRE transactions, also known as "lease comps."[3]  For years, professionals in the CRE industry have relied primarily on the lawful trading of lease transaction information in order to accumulate data that each CRE professional needs in order to conduct his or her respective business.  CompStak is a new service that enables these professionals to trade the same lease comp information (as they have for years) on the Internet in a more systematic and efficient fashion.  Mandel Decl. ¶ 2.

### B.    CoStar's Action Against CompStak Users

On April 1, 2004, CoStar filed the present Complaint against anonymous users of CompStak's service, alleging that the Doe Defendants engaged in copyright infringement and breach of contract by copying proprietary data from CoStar's CRE database and providing that information to CompStak.  The Complaint is based entirely on a single factual allegation: that CoStar's "seeded" square footage data appeared in certain lease comps on CompStak's database.

---

[3]    Unlike CoStar, CompStak's database does not include CRE listings, but rather only information about completed transactions.

CoStar asserts that "this seeded data in the CompStak service constitutes the proverbial 'smoking gun' in the hands of the Doe Defendants."  Compl. ¶ 5.  But CoStar failed to disclose that such square footage information may be disclosed and used lawfully by CoStar customers and becomes the record square footage information in CRE transactions, which is then widely and lawfully disseminated throughout the industry.  In order to assert federal question jurisdiction over the action pursuant to 28 U.S.C. § 1331, CoStar also alleges that these same CompStak users engaged in copyright infringement by reproducing and/or distributing real estate photographs on CoStar's database.  Compl. ¶ 28.  But CoStar knows full well that CompStak's service contains *no photographs whatsoever*.  Nevertheless, despite the lack of any good faith basis for its claims, CoStar immediately issued a Press Release (attached hereto as Exhibit B) announcing that users of CompStak's database had allegedly violated its copyrights.

On April 9, 2014, CoStar brought an *ex parte* motion for leave to take expedited discovery from CompStak in order to discover the names of the Doe Defendants.  A hearing was held at 11:00 A.M. on April 11, at which the Court ordered CompStak to provide – by noon on April 18 – the names and addresses of the parties related to the five instances of alleged infringement identified in Exhibit B to the Complaint.  Although the Court instructed CoStar to inform CompStak of the hearing, notice was not provided to CompStak's counsel until after the close of business at CompStak on April 10.  As a result, counsel for CompStak could not submit response papers prior to the hearing.  As of the hearing on April 11, CompStak's Counsel had not yet learned of the Consent Order issued against CoStar, had not investigated CoStar's claim about misuse of information, and had no opportunity to communicate with the Doe Defendants.

After the Court issued its Order, however, CompStak learned that (i) CoStar is subject to an FTC Consent Order that prohibits CoStar from pursuing this action if the Doe Defendants

obtained the square footage information from public sources (Exhibit A); and (ii) the Doe

Defendants all in fact did obtain the alleged "seeded" square footage data from widely known

public sources (Declarations of John Doe Defendants 1-3).  On April 16, CoStar issued a second

Press Release (attached hereto as Exhibit C) announcing that the Court ordered CompStak to

disclose the names of alleged infringers of CoStar's copyrights, even though the Court expressed

doubts as to the viability of CoStar's copyright claims, and its own subject matter jurisdiction.[4]

## ARGUMENT

A motion for reconsideration may be awarded where "the moving party can point to …

data that the court overlooked—matters, in other words, that might reasonably be expected to

alter the conclusion reached by the court."  *Shrader v. CSX Trans., Inc.*, 70 F.3d 255, 257 (2d

Cir. 1995).  The decision to grant or deny a motion for reconsideration is within "the sound

discretion of the district court," and such a motion may be granted for "any ... reason that

justifies relief."  *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (internal marks and citations

omitted).

### A.    An August 2012 FTC Consent Order Prohibits CoStar From Filing Judicial Actions Against Persons Who Provide Independently-Obtained Data to CoStar's Competitors

On April 27, 2011, CoStar announced it had entered into an agreement to acquire

LoopNet, Inc., its only competitor in the market for the provision of CRE listings databases and

information services.  Not surprisingly, the FTC opened an investigation into the proposed

---

[4]    The Court's doubts are well-founded.  The covenant CoStar alleges was breached was not
one governing use of the copyrighted material itself, but rather a covenant about use of other
information (i.e., square footage information) that is merely appurtenant to the scope of the
license grant.  If CoStar had any claim here at all (and it does not) it would be one for breach of a
license agreement, not for copyright infringement.  *See, e.g., Graham v. James*, 144 F.3d 229,
236-38 (2d Cir. 1998).  There would be no federal question presented.

acquisition soon thereafter and, on April 26, 2012, filed a complaint challenging the acquisition

as anticompetitive under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, and

Section 7 of the Clayton Act, 15 U.S.C. § 18.[5]  CoStar settled the case by entering into an

agreement with the FTC that required it to divest certain LoopNet assets.  The FTC's Consent

Order (attached hereto as Exhibit A) also prevented CoStar from engaging in conduct that would

suppress competition.  As the FTC acknowledged in its press release announcing the settlement

(attached hereto as Exhibit D), such relief "is unusual in a merger settlement" but was necessary

in this case to enable competitors to "expand or enter into the space."  On August 29, 2012, after

a unanimous vote by the Commissioners, the FTC approved the Consent Order.

 The Consent Order contains a number of provisions that explicitly prohibit CoStar from

engaging in certain types of conduct, the effect of which would be to suppress competition from

services like CompStak.  These provisions include Section III.A.1, which states as follows:

> For five (5) years after the Order Date, Respondents shall cease and desist from
> inviting, entering into, implementing, continuing, enforcing, or attempting or
> threatening thereto, any existing or future oral or written condition, requirement,
> policy, agreement, contract or understanding (in effect on the Order Date or that
> goes into effect after the Order Date) with any Customer that:
>
> > 1. Directly or indirectly prohibits or restricts a Customer from providing
> > any CoStar Competitor ... CRE Listings or CRE Information that relates to
> > Represented Property or Nonrepresented Property, which CRE Listings or
> > CRE Information was obtained or derived by the Customer from a source
> > other than a CoStar Database.

Section III.H similarly prohibits CoStar from taking action against its customers for sharing CRE

information that is obtained or derived by the customer from a source other than CoStar:

> Respondents shall not discriminate against, penalize, or otherwise retaliate against
> a Customer because the Customer: (i) provides or considers providing CRE

---

[5] *See* Complaint, *In the Matter of CoStar Group, Inc., Lonestar Acquisition Sub, Inc., and LoopNet, Inc.*, FTC File No. 111-0172 (Apr. 26, 2012), available at http://www.ftc.gov/sites/default/files/documents/cases/2012/04/120426costarcmpt.pdf.

Listings or CRE Information obtained or derived by the Customer from a source other than a CoStar Database ....

Section III.K broadly prohibits CoStar from engaging in any action, including judicial action, which violates the spirit of these aforementioned provisions:

Respondents shall not seek, directly or indirectly, pursuant to any dispute resolution mechanism incorporated in any Customer Contract or in this Order, or in any judicial action, a decision the result of which would be inconsistent with the terms or achieving the purposes of this Order.

And finally, "[i]n order to address the possible chilling effects of the industry's historically litigious reputation,"[6] the FTC included Section III.D, which states,

For five (5) years after the Order Date, Respondents shall allow, and each currently existing or future written agreement, contract or understanding with any Customers shall provide that, any Customer against whom Respondents have filed, or threatened to file, a judicial action alleging violation of Respondents' Intellectual Property rights or the use restrictions of a Customer Contract in any state or federal court may elect to resolve the Respondents' claims through arbitration ....

**B.      CoStar's Lawsuit Violates The Consent Order Because The Doe Defendants Obtained The Square Footage Data They Provided to CompStak From Independent Sources**

Through its investigation following entry of the Discovery Order, CompStak has learned that none of the accused CompStak users obtained *any* data from CoStar regarding the lease comps listed in Exhibit B to CoStar's Complaint—including the alleged "seeded" square footage data which CoStar characterizes as the "the proverbial 'smoking gun' in the hands of the Doe Defendants." As shown in their accompanying affidavits, the Doe Defendants obtained the "seeded" square footage data and other lease comp information from independent, public sources that are widely used by professionals in the CRE industry. *See* Declarations of John Doe

---

[6]   Analysis of Agreement Containing Consent Order To Aid Public Comment, *In the Matter of CoStar Group, Inc., Lonestar Acquisition Sub, Inc., and LoopNet, Inc.*, FTC File No. 111-0172 at 5 (Apr. 26, 2012), available at http://www.ftc.gov/sites/default/files/documents/cases/2012/04/120426costaranal.pdf.

Defendants 1-3 (attesting that information provided to CompStak came from sources including industry research groups, trade publications, and third party brokerage firm reports).[7]  In fact, one John Doe Defendant who uploaded data regarding two of the five subject comps attests that neither she nor anyone in her office subscribes to the CoStar Tenant service, thus making it impossible for this person to have copied any data from CoStar.  Declaration of John Doe Defendant #1 ¶ 6.  CompStak has also located some of the alleged "seeded" data in publicly available sources, including from entities that were directly involved in the underlying lease transactions and thereafter published the transaction details.[8]

        Given this evidence, which was not and could not have been put before the Court at the April 11 hearing, it is clear not only that CoStar's lawsuit is groundless, but that CoStar's filing of the suit is a direct violation of Section III, subsections (A)(1), (H), and (K) of the Consent Order.  CompStak has conferred with the FTC regarding these violations, and the Doe Defendants have or intend to do the same.

        In light of this newly obtained information, it is clear that CoStar has no good cause to obtain identifying information of the Doe Defendants as required to obtain such expedited discovery.  *See Pearson Education, Inc. v. Doe*, No. 12 Civ. 4786(BSJ)(KNF), 2012 WL

---

        [7]    Again, CompStak was unable to obtain a declaration from Doe Defendant #4 in time to file the present motion.  However, this individual has assured CompStak that he obtained the information from the Commercial Market Research Council, not CompStak.

        [8]    For example, a May 23, 2011 Press Release issued by West, Lane & Schlager, the brokerage firm that actually negotiated the first lease comp transaction listed in Exhibits A and B to CoStar's Complaint (CompStak ID # 118075, 1700 Pennsylvania Avenue NW, Washington, DC) identifies the square footage for the transaction as 4,539—the same information that CoStar alleges is "seeded" proprietary data.  Mandel Decl. ¶ 6 and Ex. 1.  As another example, the same "seeded" CoStar square footage information listed on CompStak ID # 117925 (3050 K Street NW, Washington, DC) was also provided in a 2012 market report by Jones Lang LaSalle, one of the nation's largest CRE brokerage firms.  *Id.* at ¶ 7 and Ex. 2.

4832816, at *3-4 (S.D.N.Y. Oct. 1, 2012) (explaining that courts employ "heightened scrutiny" in weighing *ex parte* motions for expedited discovery of anonymous user identities, including consideration of whether a plaintiff sufficiently alleges a *prima facie* claim) (citing S.D.N.Y. cases).[9]  Accordingly, CompStak respectfully requests that the Court reconsider its prior ruling and deny CoStar's motion.

> ### C.     CompStak Will Suffer Irreparable Competitive Harm if CoStar is Permitted to Continue The Present Lawsuit Against CompStak Users

CoStar is engaging in precisely the sort of anticompetitive behavior that the FTC prohibited in its August 2012 Consent Order.  As a new entrant to the commercial real estate industry, CompStak is justifiably fearful that CoStar – a powerful and dominant player in the CRE industry – is using the present lawsuit as a pretextual attempt to intimate and harass its customers so they will stop using CompStak's service.

Disclosing the names of CompStak's customers – who have done nothing wrong and who CoStar has no good faith basis to allege otherwise – to CoStar, and allowing it to publicly pursue claims against those users, could cripple CompStak's growing yet fledgling business.  If these customers are identified and publicly sued by CoStar when all they did was provide independently obtained and widely-available square footage information to CompStak, this sends a very clear signal to CompStak's present and future clientele: if you provide any information to CompStak, regardless of how or where you obtained that information, you are at risk of being

---

9    Even where expedited discovery of John Doe identities is granted, courts will typically grant providers of such information a sufficient period of time to provide notice to the John Does and an opportunity for those persons to contest the discovery order.  *See, e.g., Digital Sin, Inc. v. Doe,* 12 Civ. 3873 (JMF), 2012 U.S. Dist. LEXIS 78832, at *13-15 (S.D.N.Y. June 6, 2012) (granting leave to serve Rule 45 subpoenas on Internet Service Providers to reveal identities of Internet users, provided that users have 60 days from service of the subpoena "to file any motions with this Court contesting the subpoena (including a motion to quash or modify the subpoena), as well as any request to litigate the subpoena anonymously").

sued by CoStar.  Mandel Decl. ¶ 9.  What's more, before reaching out to investigate the veracity of its allegations, CoStar will immediately name you in a Press Release such as the ones issued on April 1 and 16, 2004.  *See* Exhibit B (naming individuals, real estate firms, and CompStak as persons or entities involved in copyright infringement actions throughout the country); Exhibit C (announcing that the Court ordered CompStak to "disclose names of alleged infringers of CoStar's copyrights").  This will undoubtedly dissuade CompStak members from providing CRE information on its database.  *Id.*  The FTC Consent Order was issued precisely to prevent such harm.

Here, in light of information obtained by CompStak subsequent to the April 11 hearing, it is clear that CoStar has no claim in either breach of contract or copyright infringement, and that its targeting of CompStak's customers is nothing more than a thinly veiled attempt to suppress competition in direct violation of the FTC's 2012 Consent Order.

## CONCLUSION

For these reasons, CompStak respectfully requests that the Court (i) reconsider its April 11, 2014 Discovery Order; and (ii) stay its Discovery Order pending such reconsideration.

Dated:  April 17, 2014

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  s/ Tonia Ouellette Klausner

Tonia Ouellette Klausner
Jason B. Mollick
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:  (212) 497-7700
Facsimile:  (212) 999-5899
Email:  tklausner@wsgr.com
Email:  jmollick@wsgr.com

*Counsel for CompStak, Inc.*